IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL ANTHONY ARCHULETA,<br><br>                    Petitioner,<br><br>v.<br><br>STEVEN TURLEY, Warden, Utah State Prison,<br><br>                    Respondent. | ORDER GRANTING MOTION TO DISQUALIFY<br><br><br>Case No. 2:07-MC-630<br><br>Judge Tena Campbell |

On June 1, 2012, Petitioner Michael Anthony Archuleta filed what was incorrectly styled as an Objection to Appearance of Mark Field as Counsel for Respondent and a Memorandum in Support of Petitioner's Objection to Appearance of Mark Field as Counsel for Respondent.[1] (See Dkt. No. 41 and 42.) After the court granted an extension of time to submit his response, Respondent Steven Turley[2] filed his Response on July 3, 2012. (See Dkt. No. 47.) Mr. Archuleta submitted his Reply on July 17, 2012. (See Dkt. No. 49.)

---

[1] Given the nature of Mr. Archuleta's objection, and that he filed it with a supporting memorandum, the court concluded that Mr. Archuleta had filed a motion to disqualify Mr. Field and made that change in the Docket. The court scheduled a hearing on Mr. Archuleta's motion for September 27, 2012. After carefully reviewing the parties' submissions in preparation for the hearing, the court concluded the hearing was not necessary.

[2] Mr. Turley is the named Respondent for the State of Utah. The court will refer to him as the state.

Mr. Archuleta argues that because Mr. Field handled his state habeas appeal as a law clerk when the case was in the state court system, Rule 1.12 of the Utah Rules of Professional Conduct bars Mr. Field from now representing the state in Mr. Archuleta's federal habeas action before the court.  Rule 1.12 prohibits former judges and law clerks from later representing anyone in connection with "a matter" on which they "personally and substantially" worked.  <u>See</u> Utah R. Prof'l Conduct 1.12(a).  Mr. Archuleta contends that he will suffer prejudice in his habeas proceedings before the court unless Mr. Field is disqualified because Mr. Field's violation of Rule 1.12 results in an unfair advantage for the state.

The state does not dispute that Mr. Field worked as a law clerk for state district court judges with capital cases, or that Mr. Field was "personally and substantially" involved in Mr. Archuleta's habeas appeal when it was in state court.  The state also agrees that the Utah Attorney General assigned Mr. Field to work on federal capital cases, including Mr. Archuleta's.

But the state takes the position that because Mr. Archuleta's state habeas appeal is not the same matter as his federal habeas appeal, Rule 1.12 does not prohibit Mr. Field from working on the federal habeas case.  The state also argues that even if Rule 1.12 prohibits Mr. Field's involvement in Mr. Archuleta's case, that prohibition alone does not mean the court must disqualify him.  Finally, the state argues that motions to disqualify are granted rarely, and that Mr. Archuleta has not shown how he will suffer prejudice by Mr. Field's continued representation of the state.

I.      BACKGROUND

Mr. Field worked for fifteen years as the capital litigation staff attorney for the Utah Administrative Office of the Courts.  During that time, he provided legal research, writing, and

other law clerk assistance to state district court judges with capital cases before them, including Mr. Archuleta's.  (See Dkt. No. 42, Ex. D.)

The Utah Supreme Court issued its final decision regarding Mr. Archuleta's state post-conviction appeal on November 22, 2011.  One month later, on December 21, 2011, the Attorney General interviewed Mr. Field to work in the Criminal Appeals Division, and offered him a job the next day.  Mr. Field accepted the job offer immediately, and started work for the state on January 17, 2012.  (See Dkt. No. 47 at 3-5.)

On that date, the Attorney General established an ethics screen under Rule 1.12 to prevent Mr. Field from working on Menzies v. State, which is still pending in Utah's Third District Court.[3]  (See Dkt. No. 42, Ex. E.)

But the Attorney General's Office did not establish an ethics screen between Mr. Field and the other cases he worked on as a law clerk in state court.  Instead, the Attorney General assigned him to work on them in federal court.

On March 26, 2012, Mr. Field appeared as counsel for the state in Mr. Archuleta's case. (See Dkt. No. 35.)

On April 6, 2012, Mr. Archuleta's federal habeas counsel sent a letter to Utah Attorney General Mark Shurtleff expressing concern over Mr. Field's appearance, and asking for additional information about Mr. Field's work as the capital litigation staff attorney in state court, as well as information about Mr. Field's current and anticipated work on federal capital cases.  (See Dkt. No. 42, Ex. C.)

---

[3] The Attorney General provided late notice of this screen to Mr. Menzies's counsel on May 1, 2012.  (See Dkt. No. 42, Ex. F.)  The ethics wall appears to extend only to Mr. Menzies's state court action; presumably Mr. Field is free to work on Mr. Menzies's federal habeas action even though the Attorney General did not list Mr. Menzies's case as one Mr. Field would work on in the future.  (See Dkt. No. 42, Ex. D.)

On April 26, 2012, Mr. Shurtleff responded to Mr. Archuleta's lawyer and stated that "Mr. Field was not involved as a law clerk in the only matter you specifically reference – Mr. Archuleta's federal habeas action – because he did not work for the federal courts." (Dkt. No. 42, Ex. D at 2.)  Mr. Shurtleff also stated that, in addition to working as co-counsel on Mr. Archuleta's federal habeas appeal, Mr. Field would appear for the state "in the federal habeas matters involving Messrs. Kell and Honie if those matters actually proceed." (Id.)

II.     APPLICABILITY OF RULE 1.12

As the capital litigation staff attorney, Mr. Field was a lawyer who worked for the state government.  But he did not advocate on behalf of the state or serve in an official capacity for the state, which would place him under Rule 1.11 of the Utah Rules of Professional Conduct. Rather, Mr. Field was a specialized career law clerk for state district court judges with capital cases, and the appropriate professional rule to consider is Rule 1.12.

Rule 1.12 states:  "[A] lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge . . . or law clerk . . . unless all parties to the proceeding give informed consent, confirmed in writing." Utah R. Prof'l Conduct 1.12(a).

The parties agree that Mr. Field was a law clerk who "participated personally and substantially" in Mr. Archuleta's state habeas appeal, as well as in subsequent motions to set aside the district court's post-conviction judgment.  The parties also agree that Rule 1.11, which is substantially the same rule as Rule 1.12, should be used to guide the court's understanding of the word "matter" in Rule 1.12.

Rule 1.11 defines "matter" to include "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge,

accusation, arrest, or any other particular matter involving a specific party or parties." Utah R.

Prof'l Conduct 1.11(e).

By choosing the word "matter" for Rule 1.11 and Rule 1.12, the Utah Supreme Court

intended the two rules to encompass more than just the same lawsuit. In the context of

interpreting "matter" for the purpose of understanding Rule 1.12, courts have held: "The same

lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the

same situation or conduct is the same matter. . . . [T]he same 'matter' is not involved [when] . . .

there is lacking the discrete, identifiable transaction of conduct involving a particular situation

and specific parties." See Poly Software Int'l v. Datamost Corp, 880 F. Supp. 1487, 1492 (D.

Utah 1995) (citing Sec. Investor Protection Corp. v. Vigman, 587 F. Supp. 1358, 1365 (C.D. Cal.

1984) (holding two civil lawsuits, filed ten years apart with some identical and some different

claims, constituted the same matter because they addressed the same conduct involving a

particular situation and specific parties)).

But even when two matters are not the same as defined in Rule 1.11 and applied in Rule

1.12, a lawyer may be disqualified under Rule 1.12 if he received confidential information that

tainted the litigation and resulted in an unfair advantage for one party. See Poly Software, 880 F.

Supp. at 1494-1495. The court in Poly Software used Rule 1.12 to disqualify a lawyer who

mediated a dispute involving the parties who were then before the court in a legally distinct, but

substantially factually related case. The court interpreted "matter" under Rule 1.12 to include

not only the definition of Rule 1.11, but also the broader definition of "substantially factually

related matter" as understood in Rule 1.9 of the Utah Rules of Professional Conduct. See id. at

1491-1495.

No such broad interpretation is needed here.  The "matter" before the court is the same "matter" that Mr. Field worked on in state court:  Mr. Archuleta's case.  Whether in state court or federal court, the parties are the same:  Mr. Archuleta and the state.  The same parties are arguing about "the same issue of fact" and the "same situation or conduct":  the same murder, the same trial, and the same direct appeal.  The constitutional issues in Mr. Archuleta's state habeas appeal are the same ones that will be before the court in his federal habeas appeal.  Even the lead attorneys are the same:  Mr. Brunker for the state, and Mr. Murray for Mr. Archuleta.

Nevertheless, the state makes a temporal argument and a jurisdictional argument to avoid the restrictions of Rule 1.12.  The state contends that because Mr. Archuleta's state habeas action concluded, it is not the same matter as Mr. Archuleta's federal habeas action.  But Rule 1.12 and Rule 1.11 do not say anything about a matter being limited by time or final judgment, nor would the underlying rationale for either rule be protected if they did.   The prohibition of Rule 1.11 and Rule 1.12 against subsequent representation of a client in a matter that a lawyer worked on as a government lawyer, or as a judge or law clerk, "flows from the same public policy imperative of preventing the abuse of public office or appointment."  See Poly Software, 880 F. Supp. at 1492 (citing Geoffry C. Hazard & W. William Hodes, The Law of Lawyering:  A Handbook on the Model Rules of Professional Conduct § 1.12:101 (2d ed. 1994)).

The state also makes a jurisdictional argument to avoid Rule 1.12, and contends that Mr. Archuleta's habeas appeal in federal court is a different proceeding before a different judge of a different sovereign and is therefore a different "matter."  But, again, the definition of matter does not include these considerations.

As a lawyer licensed to practice law in Utah, and as a lawyer making an appearance before the court, Mr. Field is bound by the requirements of Rule 1.12.  Mr. Field's appearance in

Mr. Archuleta's matter before the court violates Rule 1.12, even if unintentionally and even if Mr. Field accepted employment and assignments from the Criminal Appeals Division in good faith.[4]

      III.    MOTION TO DISQUALIFY

Judges have broad discretion, as part of their supervisory powers, to control and maintain their courtrooms and to determine which lawyers are allowed to appear before them. See Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1383 (10th Cir. 1994). "Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states in which they are situated." Id. The District of Utah has done so. See DUCiv R. 83-1.1(g).

Second, "because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law . . . [and are thus] governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." Cole, 43 F.3d 1373 at 1383 (internal quotation and citations omitted); see also Poly Software, 880 F. Supp. at 1489-90.

The state contends that motions to disqualify rarely should be granted, and cites three unpublished opinions from this district to support that position: Nelson v. Supernova Media, 2011 WL 223797 (D. Utah 2011) (finding no ethical violation and denying motion to disqualify); Johnson v. Salt Lake Comty. Coll., 2011 WL 2636840 (D. Utah 2011) (finding no ethical violation and denying motion to disqualify); Evans v. Taylorsville City, 2007 WL 2892629 (D.

_____

[4] Mr. Field's conduct also appears to violate the spirit of Rule 1.11, which exists to prevent lawyers from exploiting public office for the advantage of subsequent clients, even if those clients are other public entities. See Utah R. Prof'l Conduct 1.11, comments [3], [4] and [5].

Utah 2007) (finding no ethical violation and denying motion to disqualify).  Each unpublished

opinion cited by the state relies upon Parkinson v. Phonex Corp., 857 F. Supp. 1474, 1480 (D.

Utah 1994), for the proposition that motions to disqualify are granted rarely.

      The original point of authority for that proposition in Parkinson is Koller By and Through

Koller v. Richardson-Merrell, Inc. 737 F.2d 1038 (D.C. Cir. 1984), vacated and remanded on

other grounds 472 U.S. 424 (1985) (holding order disqualifying counsel in a civil case is not

collateral order subject to immediate appeal).

      In Koller, the Court of Appeals for the District of Columbia Circuit reviewed, on

interlocutory appeal, the district court's decision to disqualify two lawyers and their law firm.

Although Koller was vacated and remanded on jurisdictional grounds, the court's summary of

how federal courts view motions to disqualify remains helpful because it provides context for the

principle that the state urges the court to follow here.  The Koller court agreed with the Second

Circuit that motions to disqualify should be granted rarely because they are filed more frequently

than they are warranted, and are often wasteful, time-consuming, and used for tactical, not

substantive purposes.  See Koller, 737 F.2d at 1055-1056 (citing Board of Educ. of N.Y.C. v.

Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) (citations and footnotes omitted)).

      But the better reference to Koller in Parkinson would have explained that motions to

disqualify are granted rarely unless an ethical violation has occurred that would taint the

underlying trial.  Such ethical violations typically fall into two categories:  (1) a conflict of

interest that prevents zealous advocacy or (2) the potential use of privileged or confidential

information about one party that would give an unfair advantage to a present client.

Viewed in this light, the motions to disqualify in the unpublished cases cited by the state were not denied simply because such motions are rarely granted, but because no ethical violations occurred in those cases.

Even when an ethical violation occurs, disqualification is not automatic.  See Parkinson, 857 F. Supp. 1474, 1476 (D. Utah 1994); see also Utah R. Prof'l Conduct, Preamble at [20]. Rather, disqualification depends on whether a case is tainted by the ethical violation.  See Parkinson, 857 F. Supp. at 1476.  "The essential issue to be determined in the context of litigation is whether the alleged misconduct taints the trial."  Id.  To that end, a court should consider "[t]he egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel. . . . In addition, equitable considerations such as the hardship to the other side and the stage of trial proceedings are relevant."  Id.

The Attorney General hired Mr. Field one month after Mr. Archuleta's case concluded in state court.  Part of what made Mr. Field an attractive candidate was his intimate knowledge of Mr. Archuleta's case (and others).  Mr. Field has a facility with the facts and law involved in Mr. Archuleta's case that no one else has, and because of that, he appears ideally suited to litigate Mr. Archuleta's federal habeas appeal on behalf of the state.  The state represents that Mr. Field "did not have access to any of [Mr.] Archuleta's confidential information" and cannot exploit any confidential information he may have received in state court about Mr. Archuleta's case because the court's review is limited to the record.  (See Dkt. 47 at 3 and 11.)  Moreover, the state contends that disqualifying Mr. Field would place an unnecessary restriction on a law clerk's transfer of employment. (See id. at 13.)

Despite these arguments, allowing Mr. Field to represent the state in Mr. Archuleta's federal habeas action would unmistakably taint the litigation. Mr. Archuleta is before the court in an action for federal habeas relief from his death sentence. Based on the law and the facts, he is arguing for his life and the state is arguing for his death. Mr. Field's experience as a specialized law clerk for capital cases in state court, as well as his specific work on Mr. Archuleta's state habeas appeal, "gives him an unfair advantage in the present case" that he will leverage to the state's advantage, even if unintentionally. See Poly Software, 880 F. Supp. at 1495.

More concerning is the risk to the integrity of the federal habeas proceeding created by the fact that Mr. Field may well have confidential information related to Mr. Archuleta's case that he inadvertently may use for the state's benefit.

Mr. Field was not only privy to judicial thinking about Mr. Archuleta's case, but he also had access to sealed ex parte filings and other confidential information in Mr. Archuleta's case. Rule 1.12 exists for precisely this reason. The ethical imperative against representing "anyone" in a matter that the lawyer worked on "personally and substantially" as a judge or law clerk guards against the possibility of abuse, and recognizes that lawyers themselves may not always be the best guardians of the confidential information they obtained in such positions. The court should not have to second-guess what Mr. Field knows, or parse through case histories and docket reports to determine whether or not Mr. Field has confidential information that he is going to use for the benefit his new client. Mr. Archuleta should not be asked to bear that risk.

Enforcing the strictures of Rule 1.12 against Mr. Field does not unduly prejudice him, the Attorney General, or the state. Granting the motion to disqualify does not mean that Mr. Field cannot work as a lawyer, or even as a lawyer in the Criminal Appeals Division of the Attorney

General's office.  What it does mean is that he cannot appear in federal court as an advocate for one of the parties whose case he was "personally and substantially" involved with as a law clerk in state court.  To date, that would bar him from six cases in the District of Utah:  Mr. Archuleta's and five others.  The Criminal Appeals Division has many other cases that are open to Mr. Field.

The Attorney General is also not unduly prejudiced by granting the motion to disqualify Mr. Field.  The Attorney General will not get the windfall of legal expertise and knowledge of capital cases that it hoped to acquire via Mr. Field's employment.  But the Attorney General undoubtedly has many other well-qualified lawyers who can assist Mr. Brunker in representing the state's interests in Mr. Archuleta's federal habeas action.

Since this motion was filed in a timely manner at the beginning of federal litigation, the state's legal interests will not be harmed if another lawyer is substituted to work on Mr. Archuleta's case.  This is especially true because, as the state noted, Mr. Archuleta's petition has not been filed and Mr. Field has not yet done any substantive work on Mr. Archuleta's case. (See Dkt. No. 43 at 2.)

Finally, the issues raised by Mr. Field's employment by the Attorney General and his involvement in Mr. Archuleta's federal habeas case implicate larger social and public interests. "[W]hen there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." Nyquist, 590 F.2d at 1247.

When the case will be tainted without disqualification, the regularity of judicial proceedings in state court, as well as the integrity and neutrality of the proceedings before the federal court, weigh in favor of granting the motion to disqualify.  See Erickson v. Newmar

Corp. 87 F.3d 298, 303 (9th Cir. 1996) (finding courts may disqualify attorneys not only for acting improperly but also for failing to avoid the appearance of impropriety because courts have responsibility to maintain public confidence in the legal profession); see also Kessenich v. Commodity Futures Trading Comm'n, 684 F.2d 88, 97-99 (D.C. Cir. 1982) (holding a former government lawyer should be disqualified even without evidence that he shared confidential information because of appearance of impropriety).

For the foregoing reasons, Mr. Archuleta's Motion to Disqualify Counsel is GRANTED.

SO ORDERED this 17th day of October 2012.

BY THE COURT:

_____
Tena Campbell
United States District Judge